UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES W. FORT, | No. C 05-3835 MHP (pr) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| KATHY PROSPER, warden, | |
| Respondent. | |

## INTRODUCTION

James W. Fort filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254, claiming that his right to due process was violated because he was sentenced in breach of a plea agreement he entered. For the reasons discussed below, the sentence imposed did not breach the plea agreement as written. The petition will be denied.

## BACKGROUND

The domestic violence incident that led to Fort's conviction was described in the probation officer's report: "In the present offense, the [58 year old] defendant punched [his wife] several times in the face, beat her and kick[ed] her, causing her to suffer swelling to her face and her right eye was swollen shut. She was also bleeding from her mouth. The defendant resisted arrest until backup officers and a K-9 Unit arrived. While at the police department, officers located .07 grams of cocaine in his shirt pocket." Resp. Exh. C, p. 8. Fort's criminal record included four DUI misdemeanor convictions, a misdemeanor domestic violence conviction, and a misdemeanor conviction for battery on a peace officer. Id. at 5.

Fort was charged with violations of California Penal Code §§ 273.5(a), 241(b), and 148(a)(1) and California Health & Safety Code § 11350. He entered into a plea bargain pursuant to which he agreed to plead no contest to the domestic violence charge (Cal. Penal Code § 273.5) and the prosecution dismissed the other charges. On November 9, 2004, Fort was given a suspended sentence with three years of supervised probation, and as a condition of probation he was to serve six months in county jail, "the remaining portion of this sentence, as indicated by the probation department is modifiable to a residential treatment program." Resp. Exh. D, RT 4. The sentencing judge stated that the "timing of the modification and the specific program in question" was left to the discretion of the probation department. Id. The court also ordered various conditions of probation, including that Fort participate in 104 hours of domestic violence training, and that he pay various fees and fines. Id. at 5-6.

Within about a month of sentencing, Fort refused to sign a form to accept the terms and conditions of probation. His probation was revoked on February 4, 2005 and he was sentenced to two years in prison.

Fort filed state petitions for writ of habeas corpus. The San Mateo County Superior Court denied his petition in a written decision. The California Court of Appeals and the California Supreme Court summarily denied Fort's habeas petition.

Fort then his federal petition for writ of habeas corpus. He claimed that the sentence violated due process because it violated his plea bargain. The court issued an order to show cause why the writ should not be granted. Respondent filed an answer and petitioner filed a traverse. The matter is now ready for a determination on the merits of the petition.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in San Mateo County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

**EXHAUSTION**

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). The parties do not dispute that state court remedies were exhausted for the claim asserted in the petition.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask

3

whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

## DISCUSSION

Fort contends that he understood that his "sentence would be no more than 6 months in jail, 104 hours of domestic violence training and 3 years of supervised probation." Petition, pp. 6 - 6A.  He also contends that when he entered the plea agreement, he did not know the judge was going to order an additional six months in a residential treatment program.

The plea form and original sentence reflected that the sentencing court and the parties wanted flexibility to get a sentence that would address the problem of Fort abusing his wife (which was thought to be related to his substance abuse problem), but in a way more constructive than simply sending him to state prison. See generally Resp. Exh. F, RT 37-39. The record also indicates Fort was unaware of the actual terms of his probation until he was sentenced. He apparently thought he still had a right of refusal over the particular terms of his probation, but had already given up any such right in his plea form.

A. <u>The Plea Agreement And Sentencing</u>

A form was used to memorialize Fort's understanding of the change of plea. Resp. Exh. A. The form listed all the charges against Fort and stated that he wanted to change his plea to no contest to the charge of violating California Penal Code § 273.5(a).  Resp. Exh. A, p. 1. The form had these paragraphs regarding the sentence:

> 10. My attorney has explained that the maximum penalty, including penalty assessments, which could be imposed as a result of my plea(s) of guilty or no contendere is 4 years prison, 4 years parole, $10,000 fine, $10,000 restitution fine, $220 min. fine, D.V. counseling, actual restitution.
>
> 11. I have not been induced to plead guilty or nolo contendere by any promise or representation of a lesser, sentence, probation, regard, immunity, or anything else except: 6 month county jail top, consider R.T.P. (residential treatment program). Refer for probation report.
>
> (NOTE: Any agreement on sentence where state prison is imposed included parole, and where probation is granted may still subject a defendant to the maximum penalty (see # 10) if probation is later violated.)

\* \* \*

4

> *13.     I do understand that the matter of probation and sentence is to be determined solely by the Court and will not be decided until the report and recommendation by the Probation Department has been considered.*
>
> The Court reserves the right to withdraw its consent to any sentence limitation agreement; and, in the event, I will be permitted to withdraw my plea(s) of guilty or nolo contendere and all charges will be reinstated.

Resp. Exh. A, pp. 1-2.

A change of plea hearing was held on September 16, 2004, the day the form was completed and filed. Resp. Exh. B. The judge noted that the form said Fort would be pleading to the violation of California Penal Code § 273.5(a) and he would receive "six months top." Resp. Exh. B, RT 2-3. The prosecutor interjected that the matter was to be referred to the probation department for a probation report. Id. at 3. After confirming to the court that he had discussed with his attorney the possibilities if he pled no contest, Fort entered his no contest plea. Fort also confirmed that there were no promises other than those written on the form. Id. at 3-4. The court referred the matter for a probation report. Id. at 4.

A probation officer's report and recommendation was filed on November 9, 2004. Resp. Exh. C. The report recommended that the court impose a suspended sentence with three years of supervised probation. The report recommended sixteen conditions of probation, including a requirement that Fort serve nine months in county jail "modifiable to a residential treatment program" and pay several fines and restitution amounts. Id. at 1-2.

Fort was sentenced on November 9, 2004. Resp. Exh. D, 11/9/04 RT. The court indicated that the 9-month sentence recommended by the probation officer "exceeds what the court had indicated." Id. at 3. Defense counsel argued for a four-month sentence with mandatory domestic violence, drug and alcohol counseling. Id. The court then sentenced Fort:

> Accordingly, Mr. Fort, your sentence is as follows: Imposition of sentence suspended, you are placed on three years supervised probation. As a condition of that probation, you are sentenced to serve six months in the county jail. You will be given credits for 50 actual, 24 good time work time, totaling 74 days of credit for time served.
>
> Now, the remaining portion of this sentence, as indicated by the probation department, is modifiable to a residential treatment program. However, the timing of the modification and the specific program in question I'm going to leave to the discretion of the probation department.

5

>Further ordered to obey all rules and regulations of the jail facility or any institution in which you may be placed. You are to participate in counseling or treatment as may be directed.
>
>As a separate and distinct term and condition of probation, you are ordered to enter and complete a residential treatment program and remain until release is approved by the probation officer and the program director.
>
>\* \* \*
>
>You are to participate in 104 hours of domestic violence counseling, with notice of involvement to the Court or your probation officer within 30 days from your date of release from custody. And are to complete that program within one year of enrolling in that program.

Id. at 4-5. The court also imposed other terms, including fees and fines. After the court listed all the terms and conditions of the sentence, the following occurred:

>[THE COURT:] You understand, Mr. Fort, and do you now accept those terms and conditions?
>
>THE DEFENDANT: I don't like them.
>
>THE COURT: I don't care whether you like them. Do you accept them?
>
>THE DEFENDANT: I don't accept them.
>
>THE COURT: Under the circumstances, Mr. Fort, you would leave me no option but to sentence you to the Department of Corrections.
>
>THE DEFENDANT: Let me speak to the attorney. I don't understand what this means.
>
>THE COURT: It means if you are not – just listen to me, if you would, please. It means that if you are not prepared to be placed on probation, then the option I have would be to sentence you to the low term of two years in the Department of Corrections, state prison.
>
>THE DEFENDANT: Can we put this over a couple weeks –
>
>[DEFENSE COUNSEL] MR. MORALES: No.
>
>THE DEFENDANT – so I can think about it?
>
>THE COURT: You either accept it or you don't, sir. [¶] Do you understand and do you now accept those terms and conditions of probation?
>
>THE DEFENDANT: I accept them.
>
>THE COURT: And you understand them, as well?
>
>THE DEFENDANT: Yeah.

Id. at 7-8.

A little over a month later, on December 13, 2004, the probation department recommended that Fort's probation be revoked because he refused to sign a form to agree to the terms and conditions of probation. Resp. Exh. E. A probation revocation hearing was held on February 4, 2005. At the hearing, Fort's probation officer testified that Fort had refused to sign the judge's order admitting him to probation, stating that he didn't want to do a residential treatment program and just wanted to do his jail time and see the judge. Fort did not dispute the probation officer's description of their encounter. He testified that he had never accepted any terms other than 104 hours of domestic violence, three years of probation and not more than six months in county jail. Resp. Exh. F, RT 16. Fort denied hearing the judge say at the sentencing hearing that the six-month county jail sentence could be modified to a residential treatment program. Id. at 22. In the next breath, however, Fort agreed that he heard the judge tell him that he "had to enter and complete a residential treatment program and not leave without the permission of the probation officer and the program director." Id. at 23. Fort acknowledged that, after listing the terms and conditions of probation, the judge asked him if he accepted them. Id. at 25. He stated that he only agreed when the judge threatened him with prison if he didn't and agreed "just so he can sentence me." Id. at 26.

After hearing the testimony, the court at the probation revocation hearing noted that the original sentencing judge apparently had tried to work out a sentence with probation that would prove more beneficial to Fort than simple imprisonment. The court noted that "if Fort' doesn't want to agree with terms and conditions of probation that [the probation officer] and he can work together with, then I have to make then another decision," i.e., the amount of time in prison he would get. The court found that Fort had violated probation and sentenced him to the lower term of two years in state prison. Id. at 50.

B.    State Court Rejection of Fort's Petition

The San Mateo County Superior Court rejected Fort's breach-of-plea claim in a reasoned order.

> The plea form completed by Petitioner shows that he understood that after he pled, his case was to be referred for a probation report. He was promised a 6 month top sentence and there is also a notation on the form that a residential treatment program

7

>could also be part of the sentence. There is nothing on the form that indicates any limitations on counseling or treatment programs. At his sentencing on November 9, 2004 Petitioner accepted the terms and conditions of the probationary sentence imposed by the court including a 6 month jail term, a residential treatment program, domestic violence counseling, and anger management classes. . . .
>
>Consequently, there is nothing to indicate that Petitioner's initial probationary sentence was unlawful as it was in compliance with his plea bargain.

Resp. Exh. H.

C.  Constitutional Law On Plea Agreements

When a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). Under Santobello, the defendant has a due process right to enforce the terms of his plea agreement. Buckley v. Terhune, 441 F.3d 688, 694 (9th Cir. 2006) (en banc). Santobello provides clearly established federal law for habeas purposes under 28 U.S.C. § 2254(d). Buckley, 441 F.3d at 694.

Plea agreements are subject to contract law standards of interpretation. See United States v. Kamer, 781 F.2d 1380, 1387 (9th Cir.), cert. denied, 479 U.S. 819 (1986). Because Daniels' plea agreement was made in California, the court applies California's state contract law, which was outlined as a 3-step process in Buckley.

>A court must first look to the plain meaning of the agreement's language. Cal. Civ. Code §§ 1638, 1644. If the language in the contract is ambiguous, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." Cal. Civ. Code § 1649. The inquiry considers not the subjective belief of the promisor but, rather, the "objectively reasonable" expectation of the promisee. . . . Courts look to the "objective manifestations of the parties' intent. . . . If after this second inquiry the ambiguity remains, "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."

Buckley, 441 F.3d at 695-96 (citations omitted).

/ / /

/ / /

/ / /

8

C.     <u>Analysis</u>

Applying contract law to Fort's plea agreement leads to the conclusion that the sentence imposed did <u>not</u> breach the plea agreement.  Even though Fort privately believed he had some sort of right to refuse particular terms of parole, he had given up any such right in the written document memorializing the plea agreement.

Fort's argument has some appeal at first blush, under a theory that there was never a meeting of the minds on the specific terms of probation.  "Where any of the terms are left for future determination and it is understood that the agreement is not to be deemed complete until they are settled, or where it is understood that the agreement is incomplete until reduced to writing and signed by the parties, no contract results until this is done."  B. Witkin, Summary of California Law (Contracts) § 134 (10th ed. 2005).   Here, however, the written agreement shows that the parties left the terms of probation for the court to decide and did not contemplate further negotiation by the parties or approval by Fort of the particular probation terms.

The plea form is not a model of clarity, but paragraph 13 of it is fatal to Fort's claim. Paragraph 10 set out the maximum sentence for the charge as to which Fort was pleading no contest. Paragraph 11 purported to list the parties' agreement as to any limits on the sentence.  It stated, "I have not been induced to plead guilty or nolo contendere by any promise or representation of a lesser, sentence, probation, regard, immunity, or anything else except: __."  The list is not grammatically correct, due in part to the apparently misplaced comma after the word "lesser," the omission of a colon or other punctuation to signal where the list began, and the inclusion of the word "regard."  However, paragraph 11 did state that the matter was to be referred for a probation report.  Fort understood that he was going to be put on probation, as he has consistently maintained that he agreed to three years of supervised release, although the 3-year time frame was not mentioned in the form.  Paragraph 13 stated that Fort understood "that the matter of probation and sentence is to be determined by the Court and will not be decided until the report and recommendation by the Probation Department has been considered."  The plain meaning of paragraph 13 was that the parties

9

were going to let the probation department recommend terms of probation and the court had exclusive power to determine which of those recommended terms would become part of the sentence.

One thing that is quite clear from the record is that Fort balked at the probation terms as soon as he heard them. He protested at the sentencing hearing, he promptly tried to contact his public defender to complain about the sentence, See Resp. Exh. F, RT 17-18, he protested when the probation officer came to his jail cell to get him to sign the probation agreement, and he protested at the probation revocation hearing. He filed his first state habeas petition asserting his breach of plea agreement claim within two months of the probation revocation. Fort's activity has been consistent in his position that he did not understand that he could be subjected to the terms of probation that became part of his sentence.

The problem for Fort is that, although he may have believed in his mind that he retained a right of refusal on the particular terms or that probation had no terms, he signed a form that reflected otherwise. Because the plain meaning of paragraph 13 of the plea form gave to the probation department the power to recommend terms of probation and gave to the judge the exclusive power to determine which of the recommended terms would become part of the sentence, the contract analysis ends there. See Buckley, 441 F.3d at 695-96. Even if the plea form was considered ambiguous in that it did not specify that Fort had no right of refusal over the particular terms of probation to which he would be sentenced, and therefore required one to proceed to the second step of a contract analysis under California law, Fort would not prevail. The objective manifestations of the parties' intent included: (a) the form left probation and sentence to the judge's discretion, (b) Fort confirmed that there were no promises other than those written in the report, (c) Fort did not object at the change of plea hearing to the referral of the matter to the probation department, (d) Fort knew he was going on probation, (e) at the sentencing hearing after the probation terms were listed by the judge, Fort's attorney told Fort "no" when Fort asked if the matter could be put over for a couple of weeks so he could think about it – thus reflecting that his attorney did not think Fort had any

10

1 right of refusal on the terms of probation, (f) Fort never alerted anyone to his belief he had a
2 right of refusal on the terms of probation, (g) Fort had been on probation before, and (h) Fort
3 never expressed that he thought probation had no terms.  Under the circumstances, the
4 prosecutor would have had no reason at all to believe that Fort understood he had a right to
5 refuse the terms of probation or that probation came without any terms.  Although this court
6 can use 20-20 hindsight to figure out that Fort's problem was that he thought he had some
7 right of refusal on the particular terms of probation or that there were not to be any terms, he
8 never actually articulated that.

9       The state habeas court erred in two ways, but neither warrants habeas relief here.  The
10 first problem concerns the anger management course, which the state habeas court said was
11 part of the sentence.  The judge at the probation revocation hearing stated that the 32 hours of
12 anger management was part of the sentence imposed earlier.[1]  However, the anger
13 management course (which is different from the 104 hours of domestic violence training)
14 was not mentioned in the probation officer's report, in the plea form, at the change of plea
15 hearing, or at the sentencing hearing.  Even the prosecutor doubted that an anger
16 management course had been part of the sentence.  See Resp. Exh. F, RT 4-5.  The state
17 habeas court's statement that an anger management course was one of the terms of the
18 sentence was "an unreasonable determination of the facts in light of the evidence presented in
19 the State court proceeding."  28 U.S.C. § 2254(d)(2).  The second problem with the state
20 habeas court's decision is the determination that Fort accepted the terms of the sentence.  To
21 the extent this implies a voluntary acceptance, it was unreasonable in light of the fact that
22 Fort "accepted" when presented with the alternative of an imprisonment.  However, it was
23 not legally necessary for Fort to accept the sentence after he had filled out the form and
24 entered his no contest plea, so any error in this regard was irrelevant.

25       The original sentence imposed did not violate the terms of the plea agreement.  And
26 when Fort violated probation, the sentence imposed thereafter was consistent with the terms
27 of the plea agreement, which had provided that Fort could be subjected to the maximum
28 penalty described in paragraph 10 if probation was violated.  He is not entitled to the writ of

11

habeas corpus.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is denied on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: May 9, 2007

Marilyn Hall Patel
United States District Judge

**<u>NOTE</u>**

1.        The confusion stems from an apparent error in the sentencing court's minutes.  At the probation revocation hearing, the judge stated that the minutes showed that the sentence included 32 hours of anger management.  <u>See</u> Resp. Exh. F, RT 4-5.  The prosecutor indicated his understanding that it was 104 hours of domestic violence counseling.  <u>Id.</u>

          Fort also makes the same mistake about the anger management course, arguing that he did not expect to be required to take 32 hours of anger management training.  Fort's reliance on the alleged inclusion of the 32 hours of anger management to show that the sentence imposed violated the plea agreement is misguided because it wasn't part of the sentence.  Further, Fort had already violated probation before he ever learned of that alleged term of probation with which he didn't agree.